## JOHN P. JETER, PLAINTIFF IN ERROR, *v.* JAMES HEWITT, MELVILLE HERON, AND MARY CONRAD.

Where a mortgage of land and slaves, in Louisiana, was made to the Bank of Louisiana, the property sold in the manner pointed out by the charter of the bank, the purchasers applied to the District Court, (State court,) under a statute of Louisiana, for a monition, citing all persons who objected to the sale to make their objection known; that court decided that the sale was null and void, but the Supreme Court reversed the judgment as to the widow, and those claiming under her; this judgment cuts off all the objections that apply to the manner of conducting the sale, and to the form of the judgment in the court below.

The Supreme Court of the State decided that the courts below had jurisdiction of the case, and that decision is binding upon this court. The whole matter now in controversy has therefore been legally adjudicated by the courts of the State.

THIS case was brought up by writ of error from the Circuit Court of the United States for the eastern district of Louisiana.

It was an action brought by John P. Jeter, a citizen of Louisiana, resident in New Orleans, against James Hewitt and David Heron, citizens of the State of Kentucky, temporarily within the jurisdiction of the Circuit Court for the district of Louisiana.

The nature and history of the case are stated in the opinion of the court. It was submitted to the Circuit Court upon the pleadings, depositions, oral testimony, and arguments of coun-

sel, which found the facts substantially as they are narrated in the opinion of this court, and then dismissed the petition of the plaintiff. A writ of error was sued out, which brought the case up to this court.

It was argued by *Mr. Carlisle*, upon a brief filed by himself and *Mr. Badger*, for the plaintiff in error, and by *Mr. Benjamin* for the defendants.

As the judgment of this court turned upon the point that it was *res judicata*, only the arguments upon that subject will be reported.

The counsel for the plaintiff in error made the following points, amongst others:

VI. The validity of this title set up by the defendants is not *res judicata*, as maintained by counsel in the court below. The monition suit on which this pretension is founded could have no such effect, if the proceedings in the fifth District Court were a nullity. This seems clear upon principle.

5 Monition Act, B. and C.'s Dig., 586.

City Bank *v.* Walden, 1 Ann., 47.

16 Louisiana R., 596.

Besides, the court where the monition suit was prosecuted had no jurisdiction over the original suit, and could have none over that which was merely incidental.

Again: The judgment in the monition suit was not a judgment upon the merits, even against Mrs. Ford, and was not at all against Jeter.

C. C., 2265.

Finally: The decree of homologation, in its terms, seems really to come to nothing, since it only confirms and homologates the sale, " in so far as the same has not been opposed," while the record shows that it was totally opposed.

VII. Jeter is not estopped to claim against the sheriff's sale, or to show the nullity of the proceedings upon which it is based.

In this respect, this case is in striking contrast with Erwin

*v.* Lowry, in 7 Howard. There, Hector McNeill, under whom Lowry claimed, had actively participated in the proceedings at the sale, had joined in the selection of appraisers, had requested the marshal to offer the land and negroes together, which was done, and all this in the presence of Erwin; and, upon the faith of this conduct, Erwin purchased. In the present case, on the contrary, it is distinctly proven, by two witnesses, that Jeter, "in a loud and audible tone," announced "to the sheriff and the by-standers" that he was the owner of the property, and forbade the sale of it; and this announcement was made before the property was adjudicated to Hewitt & Heron."

"He made his objections known publicly to the crowd." The sheriff answered, that "he would proceed with the sale."

The only facts relied on by the defendants, as creating an estoppel, are, first, that Jeter was present at the sale, and, when the property was first offered, bid for it $70,000, and it was knocked down to him; and secondly, that in 1852 he joined with Mrs. Ford in making a deed for forty arpens of the land, to Hewitt & Heron, for $2,000.

As to the first, his bid was for the protection of his own interest, and to avoid litigation. He had already paid Mrs. Ford $5,000, and he had agreed to pay, not only the debts charged on this property, but all the debts. Such a fact, even if the other party had acted upon it, could create no estoppel.

Hearne *v.* Rogers, 17 Eng. C. L. Rep., 451, 452.

But Hewitt & Heron did not act upon it. The sheriff refused Jeter's draft on Hill, McLean, & Co., of New Orleans, with whom he had arranged for the money, and refused him time to go to New Orleans to produce the money, and "demanded that he should pay in cash the amount of his bid within half an hour, or he would set up the property and sell it again, which he did."

Then it was that Jeter gave notice of his title, and forbade the sale; and Hewitt & Heron purchased under this notice.

As to the deed made in 1852, so far from importing a recognition of the title of Hewitt & Heron, it would rather signify

an admission by them that, at least as to this fragment of forty acres, it required confirmation by a deed from Jeter.

In no.view of these facts can they operate an estoppel. The general current of authorities, English and American, establishes the principle that a declaration *in pais* shall not work an estoppel, unless it appears affirmatively that it was intended that the party for or to whom it is made should act on the faith of it, and that he actually did so act, and will be prejudiced by the contrary assertion. If it be necessary to cite authorities for this, they will be found collected in Hare & Wallace's note to Howard & Hudson, (2 Ell. and Bl., 13, Amer. ed.,) and in the principal case. Here there was express warning given.

Upon the question that the merits of the case were not open for review in this court, *Mr. Benjamin* made the following points:

I. This action, plainly, is based on the assumption that the proceedings in the State courts of Louisiana (under which the title of Ford's succession to the property was divested, and the property was sold to defendants), are an absolute nullity.

It is an attempt, indirectly, to bring before the Federal courts jurisdiction of a question which, under the decisions of this court, cannot be examined by them.

Had the courts of Louisiana jurisdiction of the property appertaining to Ford's succession, and have they exercised that jurisdiction by disposing of that property? Manifestly, yes.

How, then, can that disposition of the property be supervised or revised by the Federal courts?

This court has always declined to permit the proceedings of even the inferior State courts to be attached collaterally before it.

Tarver *v.* Tarver, 9 Peters, 174.

Gaines *v.* Chew et al., 2 How., 619, 644.

Fonvergne et al. *v.* City of New Orleans, 18 How., 471.

Hagan *v.* Preston, decided at present term.

In this case, the plaintiff goes to the extravagant length of

calling on the court not to annul the proceedings of an inferior State court as irregular or illegal, but to treat the final decision of the Supreme Court of Louisiana as an absolute nullity.

The form chosen for the action (a simple petitory action or ejectment) is a transparent device used by plaintiff to avoid the necessity of bringing an action to set aside the judgment of the Supreme Court of Louisiana, he being conscious that such action would be utterly untenable.

II. Jeter was a party to the suit determined by the Supreme Court of Louisiana, and it forms *res judicata.*

It is true, he was not a party by name; but the opinion of the Supreme Court is explicit, that Mrs. Ford's action as executrix was for the use of Jeter. Its language is: "We think it inequitable to permit this sale to be questioned by the executrix, whom we consider as merely attempting to aid Jeter, her vendee and agent, in a speculation, at the expense of these bona fide purchasers, under the guise of representing a small minority of the creditors, whom she personally and Jeter are bound to pay."

But, aside from this decision, the record permits no doubt that the suit decided in Louisiana was Jeter's suit. In the sale from Mrs. Ford to him, he exacted a promise that she would furnish him "my letter of substitution to appear for me and in my stead, to appear and act in any court, * * * touching matters or interests in any manner connected with the active or passive properties, goods, or effects, of the aforesaid succession."

She did give him just such a power; and, having sold to him her entire interest in the estate, and obtained his obligation to pay the debts, she withdrew from the whole business, leaving to Jeter, who alone had an interest, permission to use her name, and it was Jeter who brought the suit.

Having once litigated his rights through all the courts of Louisiana, the plaintiff cannot renew the contest in the Federal courts. The *exceptio rei adjudicatæ* is a complete bar to his suit.

III. The monition, proceedings, and judgment on them, are in the nature of proceedings *in rem*, and bind all the world.

even those ignorant of their pendency—*a fortiori*, do they bind one who, like Jeter, was not only conusant, but was active in opposition.

The monition law of Louisiana (Acts 1834, p. 125, Revised Statutes, 1852, p. 425) is a wise and beneficial statute, and should be liberally construed. It was passed for the protection of innocent purchasers at sheriff's sales, and by the fourth section the court that issued the process had jurisdiction.

By the sixth section, the judgment is conclusive evidence that the proceedings of the court on the monition were regular; and by the seventh section, the judgment of the court confirming the sale operated as *res judicata*, and a complete bar against *all persons*, whether of age or minors, whether present or absent; and the judgment is to be considered as "full proof, and conclusive that the sale was duly made in virtue of a judgment or order legally and regularly pronounced on the interests of parties duly represented."

There is nothing in the 8th section which can release the plaintiff from the effect of this estoppel, because "notices of the sale and appraisement were served by the sheriff, by leaving them on the plantation with the overseer, and plaintiff had notice of the sale, and was present at it, and bid for the property."

Besides, plaintiff was in the place and stead of Ford, and had his rights, and no more. But Ford had confessed judg ment in the original mortgage, and had thereby waived citation to make defence.

When a mortgage is granted with confession of judgment, executory process issues at once without citation, (Code Practice, 734,) and is in the nature of the *fi. fa.* that is issued on such judgments as are confessed in court.

IV. Jeter's presence at the sale, his bidding, his failure to notify other bidders of any opposition to the sale, form a complete *estoppel en pais*, as well under the principles of equity jurisprudence as by the settled rules of the law of Louisiana

Harris *v.* Denison, 8 L. R., 543.

Dozer *v.* Squires and al., 13 L. R., 130.

Walker *v.* Allen and al., 19 L. R., 308.

McMasters *v.* Commissioners, &c., 1 Annual, **11.**

Muir, Syndic, *v.* Henry and al., 2 Annual, 593.

Moore *v.* Lambeth, 5 Annual, 67.

Bank of Louisiana *v.* Ford, 9 Annual, 299.

V. Both Mrs. Ford and Jeter were parties to a deed, by which, in consideration of $2,000, they ratified the title of the purchasers.

This deed was passed on the 11th April, 1851. It had reference to the property now in dispute. Compare description in deed with testimony of Robert Maurin, the plan H, the testimony of P. O. Ayraud, and T. Ayraud, Chapman's testimony, and the description in the mortgage to Bank of Louisiana, the identity of the tract will be apparent. Besides which, the recitals of the deed admit that the land which surrounds that described by its terms, on each side and in the rear, belongs to defendants.

Mr. Justice CAMPBELL delivered the opinion of the court.

The plaintiff commenced this suit to recover a plantation and slaves, with the horses, mules, implements, and other things enumerated in the petition, destined to the use and convenience of the plantation, and for an account of rents and issues for a term of years. He deduces his title from Christopher Ford, who was in possession of the plantation at his death, in 1849, through a conveyance from Louisa W. Ford, the widow, executrix, and instituted heir of her deceased husband, dated in November, 1850.

The defendants show, that in November, 1845, two banking corporations of Louisiana (Bank of Louisiana and New Orleans Canal and Banking Company) sold to Christopher Ford this plantation and twenty-eight slaves, for the price of $40,000, a portion of which was paid in cash, and for the remainder a credit was given, and that Ford mortgaged the property conveyed to him, and sixty-eight other slaves, which he agreed to place on the plantation. On the same day, he obtained from the Bank of Louisiana a loan of money, which was secured by another mortgage on the same property. At

the time of the death of Ford, he was in arrears for the debt and interest that had accrued.

In the mortgage to the Bank of Louisiana, Ford agrees not to alienate, deteriorate, or encumber, the property mortgaged, and confesses judgment for the sum of money to be paid. He renounces the benefit of the laws that require property seized on execution to be sold on credit or after appraisement, and agrees, that if the debt shall not be paid according to the tenor of the mortgage, then the banking company may obtain an order of seizure and sale, and sell the mortgaged premises and slaves by public auction, for cash, after an advertisement of thirty days. He waives his privilege to be sued in any other district than the first judicial district of the State, and agrees that process may issue from the District Court for the first district, or any other court in New Orleans having jurisdiction.

The charter of the bank provides, that upon all mortgages executed under the act, the bank shall have the right to seize the property mortgaged, in whatever hands it may be, in the same manner and with the same facilities that it could be seized in the hands of the mortgagor, notwithstanding any sale or change of the title or possession thereof, by descent or otherwise.

On the 16th December, 1850, after the conveyance of Mrs. Ford to the plaintiff, the Bank of Louisiana instituted a suit upon the second mortgage above mentioned; a writ of seizure and sale issued, and the property was advertised for sale the 1st February, 1851. Jeter was present at the sale that took place on that day, bid for the property the sum of seventy thousand dollars, and it was adjudicated to him at that price. He offered a draft for the amount of the execution, on merchants residing in New Orleans, and asked for time to go for the money; and these being refused, the property was again offered for sale, and purchased by Heron & Hewitt for the price of sixty-six thousand dollars; and thereupon the sheriff executed a deed to the purchasers, conformably to the adjudication.

This sum being insufficient to discharge the encumbrances on the property, proceedings were taken for the seizure and

sale of other slaves, which were sold in September, 1851, and adjudicated to the defendants.

The defendants resist the claim of the plaintiff under these titles. The plaintiff objects to them—

1. That Ford, the mortgagor, was dead at the commencement of these proceedings, and that the notice issued to him was nugatory; that his heir and executrix was not notified at all, and did not reside in the parish of Ascension, nor have any title to the plantation at which the notices of the seizure were left; and that the plaintiff is not concluded by his presence at the sale and bid for the property, having forbade the sale before the offer at which the defendants became the purchasers was made.

2. That the sale was irregular and illegal, in respect of the notice of the seizure, the advertisements, appraisement, and refusal to allow the plaintiff time to complete his purchase.

3. That the fifth District Court was not authorized to entertain a suit for a thing in the parish of Ascension; and that, if consent could give jurisdiction, the consent given by Ford in his mortgage was personal, and binding only in respect to his own privilege, and did not affect his heir or her assignee.

The purchasers, Heron & Hewitt, in April, 1852, applied to the District Court of New Orleans, under a statute of Louisiana, for a MONITION, citing all persons who can set up any right to the property adjudicated, in consequence of any informality in the order, decree, or judgment of the court, under which the sale was made, or any irregularity or illegality in the appraisements and advertisements, in time or manner of sale, or for any *other defect whatsoever*, to show cause why the sale so made should not be confirmed and homologated, and, after due proceedings in the premises, that the said sales be confirmed, homologated, and made the final judgment of the court.

The executrix (Louisa W. Ford) appeared to this monition, and made opposition to the homologation of the sale, and disclosed at large the objections above specified, and prayed that the sale be declared null and void, and that the property might be restored to her possession.

To this opposition Heron & Hewitt replied, that they were bona fide purchasers at a public sale by the sheriff of Ascension, under a writ from the court, without any knowledge of neglect, or illegality, or want of jurisdiction; that the opponent had sold her interest in the property, and was estopped to oppose the sale by her acts. They pleaded that the mortgage contained a confession of judgment, and no notice was necessary to any one to obtain a judgment; and assert there is no just cause to deny the homologation of the sales.

The District Court, at the November term, 1852, entered an order describing the property embraced in the sheriff's deed, and reciting the facts relative to the grant of the monition, and the motion for the homologation of the sale, and conclude:

"The court being satisfied, from inspection of the record and evidence adduced, that all the formalities of the law have been complied with; that the advertisements required have been inserted and published for the space of time and in the manner required by law; that the property has been correctly described, and the price at which it was purchased truly stated; and there being but one opposition filed thereto, to wit: by Mrs. Christopher Ford, it is adjudged and decreed that said sheriff's sale be confirmed and homologated according to law, in so far as the same has not been opposed."

The cause was continued in the District Court, upon the opposition proceedings of Mrs. Ford.

In June, 1853, the District Court rendered the judgment upon this opposition, that the sale was null and void, for the reasons pleaded, and condemned the petitioners (Hewitt & Heron) to costs. An appeal was taken to the Supreme Court of Louisiana. That court rendered its judgment in 1854.

The court say: The appellants are bona fide purchasers at a judicial sale of the plantation and slaves, at the instance of a mortgage creditor, at a fair price, which has been paid, and possession taken, and improvements made. That, as executrix, Mrs. Ford had done nothing, except to obtain probate of the will, and as heir she has sold her interest to Jeter in the estate, he covenanting to pay the debts, and that she gave him a power

to sell and administer the estate. That Jeter had failed to comply with his bid at the sheriff's sale, and that then the appellants had become the purchasers, settled with mortgage creditors, and took possession. "Under these circumstances," the court conclude, "we think it inequitable to permit this sale to be questioned by the executrix, whom we consider as merely attempting to aid Jeter, her vendee and agent, in a speculation, at the expense of these bona fide purchasers, under the guise of representing a small minority of the creditors, whom she personally and Jeter are bound to pay. It is obvious, under the facts above stated, that neither of them, Jeter and Mrs. Ford, would be permitted personally to question the sale, on account of the alleged informalities." And thereupon the decree of the District Court was reversed, and the opposition dismissed, reserving to the creditors their right, if any, to sue for a rescission of the sale. Bank of Louisiana *v.* Ford, 9 Ann., 299.

The effect of the judgment confirming and homologating the sale is declared in the statute that authorizes the monition to issue, in favor of purchasers of property "at sheriffs' sales," at those "made by the syndics of insolvents' estates," at those "made by the authority of justice," or of courts, and to enable them "to protect themselves from eviction from the property so purchased," and "from any responsibility to the possessors of the same." It confers upon the order made by the court upon the monition, "the authority of *res judicata*," so as to operate "as a complete bar against all persons, whether of age or minors, whether present or absent, who may thereafter claim the property so sold, in consequence of all illegality or informality in the proceedings, whether before or after judgment;" and the judgment of homologation is to be received and considered "as full and conclusive proof that the sale was duly made according to law, in virtue of a judgment or order legally and regularly pronounced on the interest of the parties duly represented," saving and excepting, "that it shall not render a sale valid made in virtue of a judgment, when the party cast was not duly cited to make defence."

The judgment of the District Court homologating the sale

concluded all parties except Mrs. Ford, who had filed opposition to the order. Subsequently the Supreme Court overruled her opposition, assigning as the reason that the sale was fair, the purchasers bona fide, and the opponent had no interest in the subject of contest. The plaintiff, whether we consider him as acting independently or in connection with Mrs. Ford, and under the "guise of her name" and character, is affected by these orders.

By the very terms of the statute, all the objections that apply to the manner of conducting the sale and to the form of the judgment are cut off by the judgment of homologation.

The only question that the judgment leaves open is, whether the court that rendered the original judgment had jurisdiction of the person. But this question was presented to the District Court and the Supreme Court upon the opposition of Mrs. Ford, in the same manner in which it is presented to this court. The facts of the death of Ford, the probate of his will in the parish of Ascension before the order of seizure, the seizure within three days from the date of the order, the notice directed to Ford, and left at the house of the overseer, in the absence of Mrs. Ford, and after her sale to Jeter, the presence of Jeter at the sale, the adjudication to him of the property upon his bid, and the resale upon his neglect to comply with the terms of the sale, and the purchase by Heron & Hewitt, with the sheriff's deeds to him, were presented to those courts upon the evidence that has been submitted to this court.

The decision of the Supreme Court of Louisiana was, that as executrix, Mrs. Ford did not really and truly represent the interest of the creditors of her husband in her opposition, and that she used that title to protect her own interest and that of Jeter, her agent and vendee—but that they would not be permitted "personally to question the sale, on the score of the alleged irregularities."

The authority of *res judicata* as a medium of proof is acknowledged in the civil code of Louisiana; and its precise effect in the particular case under consideration is ascertained in the statute that allows the proceeding by monition. Under the

system of that State, the maintenance of public order, the repose of society, and the quiet of families, require that what has been definitely determined by competent tribunals shall be accepted as irrefragable legal truth. So deeply is this principle implanted in her jurisprudence, that commentators upon it have said, the *res judicata* renders white that which is black, and straight that which is crooked. *Facit excurvo rectum, ex albo nigrum.* No other evidence can afford strength to the presumption of truth it creates, and no argument can detract from its legal efficacy.

The jurisdiction of the courts of the United States, in cases like the present, is derived exclusively from the fact that the parties are citizens of different States. The rights of these parties originate in the law of Louisiana, and must be ascertained by a reference to the principles adopted and administered by her constituted authorities. We are not invested with power to review the sentences of her courts, except in a few cases arising under the Constitution and laws of the United States; nor is it our province to augment or diminish their value, or to place any different estimate upon them than they have in the municipal code of the State. They are entitled to the same force and effect here as they have in Louisiana.

The statement of the case of these parties shows conclusively that the whole subject of this controversy has been legally submitted to the tribunals of Louisiana, and that the adjudication was in favor of the defendants.

This was the decision of the Circuit Court of the United States in Louisiana, from whose judgment this writ of error has been taken. It remains for us only to affirm that judgment.

Judgment affirmed.