**In re SCIENTIFIC CONTROL CORPORATION Securities Litigation.**

**Jeanne J. MASCOLO et al., Plaintiffs,**

v.

**MERRILL LYNCH PIERCE FENNER & SMITH INCORPORATED, Defendant.**

No. M.D.L. No. 157.
No. 72 Civ. 3292.

United States District Court,
S. D. New York.

June 7, 1978.

McKenzie & Baer, Dallas, Tex., Lovejoy, Wasson, Lundgren & Ashton, Stotsenburg & Donohue, New York City, for plaintiffs.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

In this consolidated class action filed originally on August 2, 1972, there is before the Court a proposed settlement agreement filed September 1, 1977. After due notice to all members of the class, a hearing has been held with respect thereto.

Familiarity will be presumed with the history of the underlying action, *Mascolo v.* *Merrill Lynch &c*, 72 Civ. 3292, and the related cases transferred to this District pursuant to 28 U.S.C. § 1407 on July 26, 1974 by the Judicial Panel on Multidistrict Litigation, for coordinated and consolidated pre-trial proceedings.

By memorandum decision dated March 22, 1976, this Court granted plaintiffs' renewed motion to maintain this litigation as a class action. Such class action status was limited solely to the claim pleaded in Count Six of the amended complaint. As finally defined, the class herein consists of all customers of defendant Merrill Lynch Pierce Fenner & Smith incorporated ("Merrill Lynch"), who purchased shares of the common stock of Scientific Control Corporation ("SCC") from Merrill Lynch in principal transactions during the period March 1, 1968 to November 21, 1969, inclusive. Class action status was denied as to the rest of the matters pleaded in the amended complaint.

Notice has been given by first class mail to all members of the class who could be individually identified through reasonable efforts, all in accordance with directions made by the Court, and in addition, constructive notice has been given to those unidentified class members by publication of a notice of the pendency of this action, and of the class determination, in the national edition of the Wall Street Journal on March 21, 1977. The final date to request exclusion from the class was fixed at May 20, 1977.

Thereafter, with the aid of a Magistrate of this Court, the attorneys explored the possibility of a settlement agreement. These negotiations resulted in the execution of such an agreement on August 31, 1977. This settlement was achieved at arms-length by competent counsel, fully advised in the matter, and after there had been extensive pre-trial discovery and more than the usual number of substantive and procedural motions.

Under the terms of the settlement, Merrill Lynch will pay $1,450,000 to be distributed *pro rata* to the class members filing valid proofs of claim, after deducting there-

from such counsel fees and expenses of the class representatives as may be fixed and approved by the Court. Distributions will be based on a determination of the total loss suffered by each such class member with respect to his purchases of stock. All members of the class who did not exclude themselves from the litigation will be barred from prosecuting any claim against Merrill Lynch with respect to transactions in SCC stock during the relevant period. The settlement concludes all the related cases transferred to this District by the Judicial Panel on Multidistrict Litigation.

The date within which claims must be postmarked was duly extended on consent to and including March 16, 1978 and thereafter enlarged to July 6, 1978. In addition to the notice to the class members provided for by the Court, fortuitous additional notification resulted from news coverage during the period from September 2, 1977 and November 11, 1977. Such news coverage referred to the proposed settlement of this case, and also announced the settlement by the Securities and Exchange Commission of its related administrative proceeding against Merrill Lynch and others.

A hearing was held before me on December 12, 1977 pursuant to Rule 23(e), F.R. Civ.P. for the purpose of ascertaining whether the settlement is fair and reasonable, and whether it should be approved. Also for consideration at the hearing was the fairness and reasonableness of claims for attorneys' fees and expenses discussed below. Total claims filed exceed the settlement fund.

The only objections which remain for consideration by the Court, all others having been withdrawn, are discussed below.

### Kevin James Griffin

Mr. Griffin purchased 100 shares of SCC and has filed a claim for $3,680.80. His objection to the proposed settlement misunderstands the issues presently before the Court. The declaration by the Court of class action status does not express any opinion as to the validity of the contentions pleaded or whether they can be proved at trial. As his ground for objection, Mr. Griffin asserts that "in consideration of the magnitude of the losses incurred by the customers of Merrill Lynch the compensation (if any) will be near to zero dollars." This is plainly incorrect. The merits of the settlement are discussed in greater detail below.

Secondly, Griffin asserts that the cost of Merrill Lynch legal fees should "not be included in the compensations funds, as it constitutes a payment by the claimants for the benefit of the defendant." The settlement does not propose that Merrill Lynch's legal fees should be paid by anybody but Merrill Lynch.

▇▇▇ Griffin also protests that notice to the class was inadequate. This is plainly not correct, and in any event, having received notice himself, he lacks standing to complain.

### Joseph Rudnick

The general counsel for the class has received correspondence from Jack P. Zimmeth, Esq., an attorney representing Joseph Rudnick. This correspondence does not constitute an objection as such to the fairness of the settlement, and was not timely filed. In any event, the Court will consider the points made.

"[I]t is not contemplated that there will be an exchange of releases unilaterally barring class members from any further action against Merrill Lynch, without a reciprocal restraint imposed upon Merrill Lynch, places every class member in a highly prejudicial situation.

For example, the margin account of our client, Mr. Joseph Rudnick, was frozen by Merrill Lynch as a result of the Scientific Control plunge. Thereafter our client was regularly and repeatedly charged interest on said account over which he had no control. To permit Merrill Lynch the opportunity to now benefit by its improper action and to conversely bar the customer from protecting himself against same would produce a strange and improper result.

Consequently, I would ask that the terms of any settlement agreement include a provision for exchange of releases where requested by a class member and that the consequences of failure to include such provision be brought to the attention of the court."

■ Mr. Joseph Rudnick is a member of the class, and has filed a claim. He failed to exclude himself from the class within the time permitted by this Court's prior orders. The attorney for the class has correctly observed that:

"I see no reason why the settlement agreement should provide for release of the class against claims by Merrill Lynch. To the extent Merrill Lynch has claims against class members, they would probably be based on failure by customers to make payments on their accounts. Such claims would exist quite independent of the claims in this class action, even if they should somehow relate to purchases of Scientific Control. Thus to the extent that Mr. Zimmeth's letter constitutes a belated objection, it should not affect the court's determination as to fairness of the overall agreement."

With this the Court agrees. The settlement here assumes that every member of the class who is receiving payment as a claimant, has paid for the SCC stock which he bought and which gave rise to his cause of action. Included in the settlement is any interest factor or claim for loss of use of the money from the date of the loss to the date of receipt. There is no basis for making a different arrangement for those members of the class who were indebted to Merrill Lynch for their Scientific Control stock, or held their Scientific Control stock on margin and had to pay interest on their debit balances. Furthermore, if class members were prevented from exercising dominion over their other stocks in margin accounts because of the precipitous decline in the market price and collateral value of SCC stock held in the same account, the injury flowing therefrom was not proximately caused by the tort complained of in this action.

Mr. Rudnick's objection lacks merit. There is no reason to require that Merrill Lynch release claimants receiving payments as members of the class.

### Lloyd and Mary Strickland

The Stricklands, who sought leave to intervene and prosecute the action as to the counts not certified by this Court as counts upon which this action may be maintained as a class action, filed an objection dated December 12, 1977. The Stricklands specifically do not object to the settlement reached as to the class action portion of this litigation.

■ Their opinion as to the balance of the counts is irrelevant in considering the merits of the class action count. The settlement agreement, however, provides that the remaining counts in this case will also be dismissed. This portion of the settlement agreement does not bind any non-parties as to those non-class action counts being dismissed. In any event, by letter dated December 15, 1977, counsel for the class has advised the Court that Stricklands' attorney has "authorized us to represent to you that in the event this settlement is approved they consent to withdrawal of their motion to intervene."

### Fairness and Adequacy

■ At the hearing it appeared that there was no issue raised, except as previously noted, by any member of the class concerning the reasonableness, propriety, fairness and adequacy of the proposed settlement. Settlement was arrived at by arms-length bargaining by experienced counsel, fully informed in the matter, and negotiating with the assistance of an experienced United States Magistrate. These persons acted with regard to the factual and legal difficulties faced by members of the class. Under established principles this Court is not required to substitute its business judgment for that of plaintiff and their counsel, but need only determine whether this settlement is fair and reasonable. In this consideration, the probabilities of ultimate success must be considered, and

there is also for consideration the effect, if any, on the class which a rejection of the proposed settlement would have, followed by a defendant's verdict at trial. The law favors compromise of disputed claims, where, as here, such compromises are just and reasonable and free from any collusion or improper conduct. See, *City of Detroit v. Grinnell Corporation*, 495 F.2d 448 (2d Cir. 1974).

In a similar, but not identical case, discussed below, *Simon v. Merrill Lynch &c*, tried without a jury in the Northern District of Texas, a judgment for defendant was affirmed, 482 F.2d 880 (5th Cir. 1973), *rehearing en banc denied*, 485 F.2d 687. Another similar but not identical case tried in 1972 before a jury in the District of Rhode Island, *Santilli v. Merrill Lynch &c*, resulted in a defendant's verdict. On May 26, 1977 in this District in *Salwen Paper Company, Inc. Profit-Sharing Retirement Trust v. Merrill Lynch &c*, 79 F.R.D. 130 (SDNY 1978), an apparently similar action was dismissed on the face of the complaint. The class action count presents mixed questions of fact and law as to which the burden of proving all elements, including scienter, rests with plaintiffs.

■ There are risks attendant on all litigation, and there is uncertainty in results inherent in any trial of issues of fact, whether or not before a jury, and further risks attendant in the course of appellate review. These factors, together with the additional fact that a substantial amount is being paid in settlement of the action, all compel the conclusion of the Court that the settlement should be approved, and that the compromise is fair, adequate, reasonable and arrived at solely as a result of good faith bargaining at arms-length.

*Claim of Jim Simon*

Between May 9, 1969 and October 23, 1969, all within the class period, Mr. Simon purchased from Merrill Lynch 1,900 shares of SCC stock. His claim as listed in the report of review of proofs of claim by general counsel is stated as $58,879.13.

Counsel assert that Simon may not participate in the class action settlement by reason of the provision of Paragraph 2(ii) of the Settlement Agreement, which excludes from the definition of "authorized claimant" members of the class who are "persons who are already barred by prior judgment or settlement from asserting the claims set forth in the complaint." Fairly read, this must be deemed to mean only persons who are barred from asserting the claims set forth in Count Six of the amended complaint, because that is the only count as to which class action status was authorized, and accordingly Simon is a stranger to any of the litigation in the individual counts of the amended complaint as to which class action status was not granted.

The claim of bar by judgment is based on findings of fact, conclusions of law and judgment entered in an action entitled *Simon v. Merrill Lynch Pierce Fenner & Smith Inc.*, previously referred to, and filed June 2, 1972 in the Northern District of Texas under Docket No. CA–3–4273. This judgment was affirmed on appeal [482 F.2d 880 (5th Cir. 1973) *reh. en banc denied* 485 F.2d 687]. In effect, after trial, Simon was non-suited for failure to establish his claim, either under the 1934 Act or based upon common law fraud. It is to be noted that this took place prior to the commencement of the instant action.

We do not have the precise complaint, nor do we have any transcript of testimony at trial in Simon's individual litigation. This Court is reluctant under all of the circumstances of this case to approve the recommended exclusion of Simon from participation in the settlement fund. The pre-trial discovery in this case, and the substantive matters resolved before Judge Tyler of this Court, and thereafter before me, comprise many unusual contentions and intricate questions of fact and law. In large part, these matters were uncertain when the adverse judgment was entered against Simon in 1972 and indeed are uncertain today. Expounded and amplified by skilled counsel, the contentions made here have resulted in a substantial recovery for a class of persons, many of whom undoubtedly could not

prove reliance on any fraudulent representations or misleading omission, and some of whom many not even have received the QRQ material concerning SCC.

■ We seek justice in our resolution of disputed claims, and must be ever mindful that the practice of barring claims by *res judicata* is a "doctrine judicial in origin." [*Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948)] developed primarily for judicial convenience. It "reflects the refusal of the law to tolerate *needless litigation*" (emphasis added), quoted from *Angel v. Bullington*, 330 U.S. 183, 192–93, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947).

In the peculiar circumstances presented by this case, the subsequently filed class action against these defendants proceeded independently of Mr. Simon's litigation. It was generated as a result of pre-trial discovery had in connection with prior complaints which were dismissed by Judge Tyler with leave to replead. The allegations of fact and the theories of law on which this action was successfully brought to settlement are apparently at least in part matters of first impression as far as class actions under the securities laws are concerned. Inclusion of Mr. Simon among the large ranks of this victorious class, many of whom are less deserving and less severely damaged than he was, in no way prolonged the litigation, nor did it require repetitive and needless efforts on the part of the Court or the parties of their counsel. The evil for which the doctrine of *res judicata* was invented, needless litigation, was not brought into play by Simon here, and will not be made apparent here by permitting him to participate. We should not punish the diligent. The entire history of our law is directed to the expungement of stale claims by statutes of limitation, statutes or repose, the doctrine of laches and other jurisprudential principles. Here, a claimant substantially damaged by the same wrongs being righted in favor of this class, brought his lawsuit promptly. He acted without the benefit of the extensive pre-trial discovery and legal research which the attorneys for

this class have invested in the outcome, and did not recover.

■ *Res judicata* has been described as a "principle of peace" *Opelousas-St. Landry Securities Co. v. United States*, 66 F.2d 41, 44 (5th Cir. 1933). It gives recognition to the salutary rule that society and litigants both are entitled to have litigation come to an end. *Res judicata*, however, does not rest upon or depend for its operation upon the correctness or incorrectness of the prior judgment raised as a bar, and often "renders white that which is black, and straight that which is crooked." *Jeter v. Hewitt*, 63 U.S. 352, 16 L.Ed. 345 (1859). As Judge Clark has pointed out, it is "actually not very well liked" by the courts. *Riordan v. Ferguson*, 147 F.2d 983, 988 (2d Cir. 1945). Underlying principles of public policy, fairness and equity must temper application of the doctrine of *res judicata* where rigidity, injustice or unfairness would ensue. *Desrosiers v. American Cyanamid Company*, 377 F.2d 864, 871 (2d Cir. 1967).

■ In light of the foregoing, the claim of Jim Simon will be allowed. In all other respects, the Report of General Counsel to the Class, setting forth rejected claims appears proper, uncontested, and it is approved.

*Legal Fees*

The criteria affecting legal fees are so well known as to require no supererogation by this Court. See *Grinnell I*, 495 F.2d 448 (2d Cir. 1972); *Grinnell II*, 560 F.2d 1093 (2d Cir. 1977); and *Matter of Potts*, 213 App. Div. 59, 209 N.Y.S. 655 (Fourth Dept.1925).

A joint fee application is pending here by the firms of Lovejoy, Wasson, Lundgren & Ashton, Esqs.; Stotsenburg & Donahue, P.C.; McKenzie & Baer, Esqs.; Edward N. Steuterman, Esq.; and Brownstein, DiPietro, Kantrovitz & Ditman, Esqs. The Court is not required to apportion the fee among the applicants.

We have noted the number of years in which this multi-district litigation has been pending. The Lovejoy firm has charged

partners' time at its then prevailing rates in non-contingent matters amounting to $96,389.00, associates' time amounting to $15,250.60 and paralegals for $59,141.50. About $10,000.00 is estimated as the additional time charges necessary to conclude the case. Mr. Stotsenburg has reconstructed his hours prior to July 1, 1974. His firm has accrued time charges amounting to $140,418.00. The McKenzie firm shows time charges of $98,345.00. Mr. Steuterman's time charges are $3,715.00. The Brownstein firm shows charges of approximately $4,950.00. This leads to total compensable time charges of $423,259.10. Disbursements incurred and to be incurred are claimed in the amount of $68,358.46. These are approved and allowed.

█ The total fees claimed here amount to not quite 30% of the net recovery of the class, after deducting disbursements. The result achieved was highly favorable. The services were rendered in a high risk situation. That the work took too long to complete, with too much time and expense devoted to pre-trial discovery, is a fault not solely attributable to the applicant attorneys. When this case began, a different judicial philosophy prevailed which allowed such wasteful and dilatory practices in connection with motions, depositions, discovery and inspection and interrogatories, all of which we hope are fast becoming things of the past. These applicants should not be penalized. The Court finds that the total joint fee requested of $400,000.00 is reasonable and proper under the applicable standards and it is approved and allowed.

Settle a final judgment on notice, which shall stay all payments pending appellate finality and reserve to the Court subject matter jurisdiction for the purpose of making such other and further orders as shall appear necessary and proper to administer and distribute the settlement fund.

So Ordered.