Richard R. **BERGERON,**
Plaintiff, Appellant,

v.

**ESTATE OF William LOEB, et al.,**
Defendants, Appellees.

No. 85–1340.

United States Court of Appeals,
First Circuit.

Argued Sept. 13, 1985.

Decided Nov. 20, 1985.

Michael C. Harvell with whom Mark F. Weaver and Sheehan, Phinney, Bass & Green Professional Ass'n, Manchester, N.H., were on brief for plaintiff, appellant.

Ralph Warren Sullivan with whom Gregory V. Sullivan, L. Michael Hankes, Malloy & Sullivan, Manchester, N.H., were on brief for defendants, appellees.

Before CAMPBELL, Chief Judge, ALDRICH and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff-appellant Richard R. Bergeron appeals from a decision and order of the United States District Court for the District of New Hampshire granting defendants-appellees' motions to dismiss his complaint and for summary judgment. We affirm in part, vacate in part, and remand.

BACKGROUND

Plaintiff-appellant Richard R. Bergeron, a New Hampshire resident, is employed by the Union Leader Corporation, which publishes New Hampshire's largest newspaper, the *Manchester Union Leader.* Until his death in 1981, William Loeb was the president and principal stockholder of the Union Leader Corporation. Bergeron's complaint alleges that he and other employees of the Union Leader Corporation entered into an agreement with Loeb during Loeb's lifetime whereby Loeb promised to transfer his stock in the Corporation to them upon his death. According to the complaint, Loeb breached this agreement by making an *inter vivos* transfer of his stock in the Corporation to the William Loeb Union Leader trust, which will not terminate until the deaths of the acting trustee, Loeb's widow Nackey S. Loeb, and her nine named successors. Bergeron alleges that, in further violation of the agreement, when the stock is eventually distributed on termination of the trust, it will go to those who are then employed by the Union Leader Corporation, and not to those employed by the Corporation as of the date of Loeb's death.

William Loeb died on September 13, 1981. Both his estate and the trust which holds the disputed stock are being administered in the Second Judicial District Court for the State of Nevada, in and for the County of Washoe. In accordance with Nevada law, Bergeron filed a general claim against Loeb's estate in the Nevada court on March 17, 1982.[1] Loeb's widow and executrix, Nackey S. Loeb, filed a rejection

---

1. Nev.Rev.Stat. § 147.040(1)(1979) provides:

   All persons having claims against the deceased must, within 90 days after the first publication of the notice [of the appointment of an executor or administrator] file the same, with the necessary vouchers, with the clerk of the court, who shall file and register each claim.

of Bergeron's claim in the Nevada court on April 5, 1982, and a copy of the rejection and notice of rejection was sent to Bergeron by certified mail.

On June 7, 1982, Bergeron instituted a class action "for himself ... and on behalf of the entire class of Union Leader Corporation employees similarly situated" in the United States District Court for the District of New Hampshire. The named defendants in Bergeron's federal action were the estate of William Loeb, the William Loeb Union Leader trust, Nackey S. Loeb in her capacity as both executrix of Loeb's estate and acting trustee of the Union Leader trust, and the Security National Bank of Nevada, which allegedly holds a security interest in the trust. Bergeron's complaint sought declaratory and equitable relief, and alleged violations of the federal securities laws as well as breach of contract and fraud under New Hampshire law. Jurisdiction over Bergeron's state law claims was based on diversity of citizenship; according to Bergeron's complaint, defendant Nackey S. Loeb is a resident and domiciliary of Massachusetts, and defendant Security National Bank is located in Reno, Nevada.

On June 18, 1982, Nackey S. Loeb filed a declaratory judgment action in her capacity as executrix of Loeb's estate against Bergeron in the Nevada state district court under Nev.Rev.Stat. § 147.130(1) (1983), which provides in relevant part,

When a claim is rejected by the executor or administrator or the district judge, in whole or in part, the holder shall be immediately notified by the executor or administrator, and the holder must bring suit in the proper court against the executor or administrator within 60 days after such notice, whether the claim is due or not; otherwise the claim shall be forever barred....

The executrix argued that Bergeron had failed to comply with section 147.130(1),

because the federal district court in New Hampshire was not a "proper court" within the meaning of the statute. She also contended that, even if the federal district court was a "proper court," Bergeron's action was time-barred under section 147.-130(1) because it was brought more than 60 days after she had filed a rejection of his claim.

Bergeron brought a motion to enjoin the executrix's Nevada action in the federal district court in New Hampshire, but the motion was denied. Thereafter, Bergeron filed an answer in the Nevada action and defended the executrix's suit on the merits. The Nevada state district court held for the executrix and, on appeal, its decision was affirmed by the Nevada Supreme Court.[2] *Bergeron v. Loeb*, 675 P.2d 397 (Nev.1984) (per curiam). The Nevada Supreme Court denied Bergeron's petition for rehearing, and the United States Supreme Court subsequently denied his petition for a writ of certiorari. *Bergeron v. Loeb*, —— U.S. ——, 105 S.Ct. 1182, 84 L.Ed.2d 330 (1985).

After the Nevada Supreme Court had ruled that Bergeron's claim against the Loeb estate was "forever barred" under Nev.Rev.Stat. § 147.130(1), the defendants in Bergeron's action in the federal district court in New Hampshire moved in that case for dismissal of his state law claims and for summary judgment on his claim under the federal securities laws. On October 12, 1984, the federal district court in New Hampshire granted both of these motions. In this appeal, Bergeron argues that the federal district court erred in dismissing his state law claims, but does not contest the district court's award of summary judgment under the federal securities laws.

## I.

Bergeron's first argument on appeal is that the federal district court in New Hampshire erred in according preclusive

---

**2.** The Nevada state district court held both that the federal district court was not a "proper court" within the meaning of Nev.Rev.Stat. § 147.130(1) and that Bergeron's action was time-barred. On appeal, the Nevada Supreme

Court affirmed the decision of the state district court on the former ground, but stated that Bergeron "had filed his claim within the requisite 60 day period." *Bergeron v. Loeb*, 675 P.2d at 399.

effect to the judgment of the Nevada Supreme Court, because the Nevada decision is repugnant to the federal Constitution. Specifically, Bergeron contends that the Nevada Supreme Court's interpretation of Nev.Rev.Stat. § 147.130(1) is not entitled to full faith and credit because it was "beyond [the Nevada court's] power" to deprive the federal district court in New Hampshire of jurisdiction over a claim that was not within the probate exception to federal diversity jurisdiction.[3]

■ We decline to consider this question because, in our view, the constitutionality *vel non* of the Nevada Supreme Court's judgment is res judicata, and must be accorded full faith and credit here. As the Supreme Court observed in *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980), under the doctrine of res judicata "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."

The issue before the Nevada Supreme Court was whether the federal district court in New Hampshire was, for the purposes of Nev.Rev.Stat. § 147.130(1), a "proper court" in which to bring an action against the Nevada executrix. *Bergeron v. Loeb*, 675 P.2d at 399. The Nevada Supreme Court concluded that it was not. Regardless of whether Bergeron adequately raised the question of the constitutionality of this interpretation in the Nevada courts, it is clear that he could have.[4] Moreover, it is beyond doubt that the Nevada judgment is a final judgment; not only has the Nevada Supreme Court rendered a decision on the merits, but the United States Supreme Court has denied Bergeron's petition for a writ of certiorari. *See*

*Diaz-Buxo v. Trias Monge*, 593 F.2d 153, 157 (1st Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979).

■ Res judicata would preclude review here even if we believed that the Nevada Supreme Court's decision was unconstitutional on its face. It has been said that "res judicata renders white that which is black, and straight that which is crooked." *Jeter v. Hewitt*, 63 U.S. (22 How.) 352, 364, 16 L.Ed. 345 (1859). In the federal system, federal courts are required by the full faith and credit statute, 28 U.S.C. § 1738 (1982), to give the same res judicata effect to final judgments rendered in state courts that they would be entitled to in the forum in which they were rendered.

In the leading case of *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940), the Supreme Court reviewed a decision of the Colorado Supreme Court which refused to accord full faith and credit to the decision of a Wyoming court on the grounds that "the Wyoming decree was void on its face because of an irreconcilable contradiction between the findings and the decree." 311 U.S. at 461, 61 S.Ct. at 341. The Supreme Court reversed, writing,

Where a judgment rendered in one state is challenged in another, a want of jurisdiction over either the person or the subject matter is of course open to inquiry.... But if the judgment on its face appears to be a "record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself." ... In such case the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or

---

**3.** The probate exception to federal diversity jurisdiction is a common law limitation which holds simply that "a federal court has no jurisdiction to probate a will or administer an estate." *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946). The rationale for the probate exception is both historical and prudential. *See Dragan v. Miller*, 679 F.2d 712, 713–15 (7th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982); Ves-

tal & Foster, *Implied Limitations on the Diversity Jurisdiction of Federal Courts*, 41 Minn.L.Rev. 1, 13–23 (1956).

**4.** Bergeron raised the constitutional issue in his brief submitted to the Nevada Supreme Court, but it is not clear from the record whether he raised this issue any earlier in the Nevada proceedings.

the validity of the legal principles on which the judgment is based.... Whatever mistakes of law may underlie the judgment ... it is "conclusive as to all the *media concludendi.*"

311 U.S. at 462, 61 S.Ct. at 342 (citations omitted). The reasoning expressed in *Milliken* is equally applicable where, as here, a state court's judgment is challenged in a federal court. 18 U.S.C. § 1738 (1982); *Allen v. McCurry*, 449 U.S. at 95–96, 101 S.Ct. at 415.

In an apparent attempt to evade the rule of *Milliken*, Bergeron argues that "it was beyond the power" of the Nevada Supreme Court to interpret the Nevada statute as it did. However, Bergeron does not argue that the Nevada courts lacked jurisdiction over the parties, and it cannot seriously be contended that the Supreme Court of Nevada lacked jurisdiction to interpret a Nevada statute or assess its validity under the federal Constitution. *Webb v. Webb*, 451 U.S. 493, 499, 101 S.Ct. 1889, 1893, 68 L.Ed.2d 392 (1981). Accordingly, we sustain the district court's dismissal of Bergeron's state laws claims against Loeb's estate and Nackey S. Loeb in her capacity as executrix.

## II.

The above holding does not conclude matters, however, for we must also consider whether the federal district court erred in dismissing Bergeron's claims against the William Loeb Union Leader trust, Nackey S. Loeb in her capacity as trustee, and the Security National Bank of Nevada, which allegedly holds a security interest in the trust. The federal district court did not say whether it was dismissing these claims on the grounds of res judicata (*i.e.*, because of the preclusive effect of the Nevada Supreme Court's judgment), or the principles relating to the conservation of judicial resources described in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), or the abstention doctrine set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). All three

of these theories were alluded to in the district court's explanation. Accordingly, we shall deal with each of these grounds in turn.

### A. *Res Judicata*

■ We do not believe that the judgment of the Nevada Supreme Court had a preclusive effect on Bergeron's claims against the Union Leader trust, the trustee, and the bank in the federal district court in New Hampshire. The Nevada declaratory action was brought by Nackey S. Loeb acting in her capacity as executrix of Loeb's estate, not in her other capacity as trustee of the Union Leader trust. The Nevada state district court, whose declaratory judgment was reviewed by the Nevada Supreme Court, held simply that Bergeron's claim against the executrix and Loeb's estate was forever barred under Nev.Rev. Stat. § 147.130(1). At the beginning of the Nevada Supreme Court's opinion, the court stated that the "sole issue" before it was whether Bergeron's claim against the estate was barred with prejudice under section 147.130(1). *Bergeron v. Loeb*, 675 P.2d at 399. To be sure, the Nevada Supreme Court later adverted at length in its opinion to the William Loeb Union Leader trust, stating,

In the instant case, the assets of the Loeb estate, in which appellant claims an interest, have been and remain under the jurisdiction of the Nevada district court. In addition, the trust, upon which appellant seeks to impose an equitable claim, was established and is being administered under the auspices of this same court. The assets of this trust are some 3,750 shares of Union Leader Corporation stock, registered in the name of William Loeb, the decedent. The legal situs of these shares is Nevada, where the stock certificates are located and the trust is being administered. Certificates of stock are the physical representation of the stock and the court's possession of the certificates gives jurisdiction over the stock. The situs of the shares is the situs of the certificates. *Haughey v.*

*Haughey,* 305 Mich. 356, 9 N.W.2d 575 (1943). *Accord, In re De Lano's Estate,* 181 Kan. 729, 315 P.2d 611 (1957). This administration of the decedent's estate and trust is in conformity with NRS 136.-010 which gives exclusive jurisdiction of the settlement of estates to the district court of the county in which the deceased was a resident at the time of death. Appellant's action in federal district court in New Hampshire essentially petitions that court to determine the ownership of the trust res which is under the jurisdiction of the Nevada district court. *Bergeron v. Loeb,* 675 P.2d at 401. Whatever the truth of the above language, however, the fact remains that neither the trust, the trustee, nor the bank were parties to the Nevada declaratory action, and the merits of Bergeron's claims against these parties were not before the Nevada court.[5] It follows that any view the Nevada Supreme Court expressed or implied as to Bergeron's claims has no res judicata effect here. *See Stein v. Mutuel Clerks' Guild of Massachusetts, Inc.,* 560 F.2d 486, 490 (1st Cir.1977); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4406 (1981).

The William Loeb Union Leader trust is an *inter vivos* trust that was funded with Loeb's shares of stock in the Union Leader Corporation prior to his death. As far as we can tell, the trust assets have never passed through Loeb's estate.[6] In these circumstances, we see no basis to conclude that the Nevada Supreme Court's judgment barred Bergeron's federal court claims in New Hampshire against the Union Leader trust, the trustee, and the bank.

One of Bergeron's claims against the trust in his New Hampshire federal court suit is based on the theory that there was a fraudulent conveyance of Union Leader Corporation stock to the trust during Loeb's lifetime. The relief sought by Bergeron includes a declaration that the stock is subject to a constructive trust in favor of Bergeron and other Union Leader employees. At least one state has upheld the right of a plaintiff to sue to impose a constructive trust upon personalty transferred to an innocent third party without joinder of the representative of the decedent who committed the alleged fraud. *Simonds v. Simonds,* 58 A.D.2d 305, 396 N.Y.S.2d 547 (App.Div.1977), *aff'd,* 45 N.Y.2d 233, 408 N.Y.S.2d 359, 380 N.E.2d 189 (1978); *see also Restatement of Restitution* § 168 (1937); 5 A. Scott, *The Law of Trusts* § 470, at 3444–45 (1967). Thus, without expressing any view as to the merits of Bergeron's claim, and without foreclosing the possibility that under New Hampshire or other applicable state law a different result may obtain, we think it has yet to be demonstrated that Bergeron lacks a legitimate basis for proceeding in the federal district of New Hampshire against the trust, the trustee, and the bank, notwithstanding the fact that he is permanently barred, as a result of the Nevada judgment, from obtaining relief against the estate.

**B.** *The* Colorado River *Factors*

As an alternative ground for its holding that the dismissal of Bergeron's state law claims was warranted, the district court invoked the principles set forth in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and recently re-

---

**5.** On July 13, 1982, soon after Bergeron instituted suit in the federal district court in New Hampshire, Nackey S. Loeb procured a decree from the state district court in Nevada confirming her appointment as trustee of the William Loeb Union Leader trust. The Nevada decree stated, "This court has and shall have jurisdiction of the Trust as a proceeding in rem under Section 164.010(1) Nevada Revised Statutes." This ex parte decree was *not* related to the declaratory action brought by Nackey S. Loeb in the Nevada state district court in her capacity as executrix and ultimately appealed to the Nevada Supreme Court.

**6.** Indeed, in their motion for summary judgment filed in the federal district court, the defendants averred that "[t]he Union Leader stock is an asset of the Estate of William Loeb for federal estate tax purposes only," and is otherwise "an asset of the William Loeb Union Leader Trust."

affirmed in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In *Colorado River,* the Supreme Court identified several factors that counsel in favor of dismissal in situations involving the exercise of concurrent jurisdiction by federal or federal and state courts, and promote the public interest in " '[w]ise judicial administration, ... conservation of judicial resources and comprehensive disposition of litigation.' " 424 U.S. at 817, 96 S.Ct. at 1246 (*quoting Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).

These factors include (1) which court first assumed jurisdiction over any res or property involved in the action; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; and (5) whether federal law supplies the rule of decision. *Moses H. Cone,* 460 U.S. at 13–26, 103 S.Ct. at 936–40. In promulgating this test, the Supreme Court cautioned that federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them," and that "[o]nly the clearest of justifications will warrant dismissal." *Colorado River,* 424 U.S. at 817, 819, 96 S.Ct. at 1246.[7]

On appeal, Bergeron argues that the federal district court in New Hampshire erred in concluding that the *Colorado River* factors counseled in favor of dismissal of his state law claims against the trust, the trustee and the bank. We agree. We need not address Bergeron's argument to the extent that it relates to his claims against Loeb's estate and the executrix, because we have already determined that the Nevada Supreme Court's decision precluded these claims.

■ Considering the *Colorado River* factors in turn, we do not think that the Nevada state district court's assumption of in rem jurisdiction over the trust res compels dismissal here.[8] In *Princess Lida v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939), the Supreme Court considered whether a federal district court could properly exercise concurrent jurisdiction over a suit involving the administration and control of a trust res that was already within the exclusive jurisdiction of the Pennsylvania Court of Common Pleas. In determining that the federal district court was without jurisdiction to hear the suit, the *Princess Lida* Court wrote,

Certain it is ... that if both courts were to proceed they would be required to cover the same ground. This of itself is not conclusive of the question of the District Court's jurisdiction, for it is settled that where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other. On the other hand, if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other. We have said that the princi-

---

**7.** In *Colorado River,* 424 U.S. at 813–17, 96 S.Ct. at 1244–46, the Court distinguished this test from the three branches of the abstention doctrine, which concern (1) cases which present difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar, *see, e.g., Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (discussed *infra*); (2) cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law, *see, e.g.,*

*Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); and (3) cases where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, *see, e.g., Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The latter two branches of the abstention doctrine have no application to the case at bar.

**8.** *See* note 5, *supra.*

ple applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of similar nature where, to give effect to its jurisdiction, the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals. While it has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a state court, this is not such a case. No question is presented in the federal court as to the right of any person to participate in the res or as to the quantum of his interest in it. The contentions are solely as to administration and restoration of corpus.

305 U.S. at 465–67, 59 S.Ct. at 280–81 (footnotes omitted). *See also Kittredge v. Stevens,* 126 F.2d 263 (1st Cir.), *cert. denied,* 317 U.S. 642, 63 S.Ct. 34, 87 L.Ed. 517 (1942). Here, in contrast to the situation in *Princess Lida,* Bergeron's claims against the trust appear to be unrelated to the administration of the trust corpus. Instead, he "seeks merely an adjudication of his right or his interest as a basis of a claims against a fund in the possession of a state court." *Princess Lida,* 305 U.S. at 466, 59 S.Ct. at 280. Therefore, the fact that the Nevada state district court in an ex parte order has asserted in rem jurisdiction over the trust res, *see* note 5, *supra,* does not warrant dismissal of Bergeron's claims that a constructive trust should be imposed on the res in his favor. *See FSLIC v. Krueger,* 435 F.2d 633, 636–37 (7th Cir.1970). .

Consideration of the remaining *Colorado River* factors does not alter this conclusion. The adjudication of Bergeron's claims to the trust corpus will not necessarily be more inconvenient in New Hampshire than it would in Nevada. Bergeron is a New Hampshire resident, the *Manchester Union Leader* is published in New Hampshire, and Bergeron's complaint alleges actions which occurred in New Hampshire in purported violation of New Hampshire law. There does not appear to be any threat of piecemeal litigation here. Not only are Bergeron's claims unrelated to the administration of the trust, but there is nothing in the record to suggest that the trust is the subject of any litigation whatever in the Nevada courts. *Compare Heritage Land Co. v. FDIC,* 572 F.Supp. 1265, 1267 (W.D. Okla.1983) (Defendant's motion to dismiss granted where plaintiff sought refuge in federal court only "after it had flailed about in state court for months and as it was facing imminent judgment."). Similarly, since Bergeron's federal action is not in rem, it is of little consequence that the Nevada court may have assumed jurisdiction of the trust res before Bergeron initiated the federal action in New Hampshire. Although Bergeron's complaint does not state a federal claim, it is clear that this factor alone does not justify the surrender of a federal court's diversity jurisdiction. *Moses H. Cone,* 460 U.S. at 23–26, 103 S.Ct. at 941–42.

### C. *The* Burford *Abstention Doctrine*

In dismissing Bergeron's state law claims, the federal district court in New Hampshire also alluded to the abstention doctrine set forth in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In *Burford,* the Supreme Court reviewed the propriety of a district court's dismissal of an action to enjoin the execution of an order of the Texas Railroad Commission relating to the drilling and operation of certain oil wells. The Supreme Court affirmed the district court's dismissal of the action, writing,

The State provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review

of the Commission's decisions in the state courts is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here.... Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand.

319 U.S. at 333–34, 63 S.Ct. at 1107–08 (citation omitted).

█ In our view, the *Burford* abstention doctrine has no application to Bergeron's claims against the William Loeb Union Leader trust. *Burford* has principally been invoked in cases where the assumption of federal jurisdiction threatens to disrupt the orderly administration of state regulatory schemes, or where the plaintiff in a diversity action seeks to restrain the exercise of authority vested in state officers. *See Allstate Insurance Co. v. Sabbagh,* 603 F.2d 228 (1st Cir.1979); 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4244, at 485 (1978). Neither of these situations is present in the case at bar. Furthermore, we cannot say that the federal district court's determination of Bergeron's rights to the assets of the William Loeb Union Leader trust "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244. Last, although Bergeron's claims may present difficult or unresolved questions of state law, we have recognized that this complication, without more, does not warrant abstention where the plaintiff has properly invoked the diversity jurisdiction of the federal district court. *Construction Aggregates Corp. v. Rivera de Vicenty,* 573 F.2d 86, 91 (1st Cir.1978).

## III.

We briefly address, in conclusion, Bergeron's argument that the district court's dismissal of his state law claims against the estate and the trust somehow deprived him of his right to a federal forum, contrary to the rule laid down in *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). *England* is inapposite, however, for in *England* the Supreme Court disapproved of the use of the abstention doctrine to deprive a litigant of his right to assert federal claims in a federal court. Here, Bergeron does not dispute the fact that the only colorable claims which he has asserted against the defendants arise under state law. *See Construction Aggregates Corp. v. Rivera de Vicenty,* 573 F.2d 86, 92 (1st Cir.1978).

## IV.

The judgment of the district court is affirmed in respect to the dismissal of Bergeron's claims against Loeb's estate and Nackey S. Loeb in her capacity as executrix.

The judgment of the district court is vacated in respect to its dismissal of Bergeron's claims against the William Loeb Union Leader trust, Nackey S. Loeb in her capacity as trustee, and the Security National Bank of Nevada, and these matters are remanded for further proceedings in the district court. On remand, the district court may wish to consider, *inter alia,* (1) what state's law governs the disposition of these claims; and (2) whether and to what extent, if any, Bergeron can properly proceed with these claims now that Loeb's estate and Nackey S. Loeb in her capacity as executrix are no longer parties to the federal action. We of course express no view on the ultimate merits of the remanded claims.

*Affirmed in part, vacated in part, and remanded.*