**Edgert MILSTEIN and May Milstein, Plaintiffs,**

v.

**Ludwig A. HUCK, Robert S. Jones, Burke Mathes, Melinda Cheney Mathes, as Executor of the Estate of Curtis Mathes, Thomas R. Maher, Jay S. Meyer, Philip S. Morse, Peter A.T. Sartin, Gerald Zarin, The Mathes Company, Curtis Mathes Manufacturing Company, Curtis Mathes Corp., and Morse Electro Products Corp., Defendants.**

**No. CV 83–1287.**

United States District Court, E.D. New York.

June 29, 1984.

Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for plaintiffs.

Graubard, Moskovitz, McGoldrick, Dannett & Horowitz, New York City, for Maher, Zarin and Morse Electro Products.

Spengler, Carlson, Gubar, Brodsky & Rosenthal, New York City, for Huck, Jones, Burke Mathes, Curtis Mathes, Maher, Meyer, Sartin, Mathes Co., Curtis Mathes Mfg. Co. and Curtis Mathes Corp.

## MEMORANDUM & ORDER

PLATT, District Judge.

In this action, maintained as a class action for the purposes of settlement, plain-

tiffs' counsel, Milberg Weiss Bershod Specthrie & Lerach (Milberg Weiss), has obtained a settlement for the class. The settlement establishes a settlement fund of $908,377.60 and, in addition, the defendants agreed to bear the costs associated with the providing of notice and the administration of the settlement. In approving the settlement, this Court has found that it is "fair, reasonable and adequate and in the best interests of the members of the Class." See Findings of Fact and Conclusion of Law filed simultaneously herewith.

The plaintiffs have made an application for an award of attorneys' fees for services rendered by Milberg Weiss on behalf of the class and for reimbursement of expenses. The plaintiffs request attorneys' fees of $227,000 and reimbursement of $5,615.79 for expenses and disbursements incurred in this action. For the reasons stated below, the plaintiffs' application is granted.

■ Courts have adopted various methods for determining a fair and reasonable attorneys' fee in contingent class actions. Most courts calculate an award based on the time expended by plaintiffs' counsel, increased by a multiplier to compensate for the benefit achieved and the contingency of success factor. *E.g., Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir.1974);[1] *Lindy Bros. Builders,*

---

1. Although the Second Circuit in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir.1974), recognized that "more is needed than a mere listing of factors ... [and that] [s]uch a list, standing alone, can never provide meaningful guidance," it did offer a list of factors that courts have used in evaluating fee awards. *Id.* at 470. These factors include:

    '(1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government,

    (2) the standing of counsel at the bar—both counsel receiving the award and opposing counsel,

    (3) time and labor spent,

    (4) magnitude and complexity of the litigation,

    (5) responsibility undertaken,

    (6) the amount recovered,

    (7) the knowledge the court has of conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiff prior to trial,

    (8) what it would be reasonable for counsel to charge a victorious plaintiff' ...

    [and] the attorney's 'risk in litigation' is another factor to be considered.

    *Id.* (quoting *Grinnell,* 312 F.Supp. at 480). While we agree that such a "conceptual amalgam is so extensive and ponderous that it is probably not employed in any precise way by those courts espousing adherence to it," *id.,* we have considered each of these factors placing substantial emphasis on numbers 2–6 and on

*Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166–69 (3d Cir.1973).[2] Other courts have considered fees by reviewing and evaluating them as a percentage of the recovery. *E.g., Amsterdam v. Turbodyne Corp.*, [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,976 (S.D.N.Y.1981); *Weinberger v. Cook Industries, Inc.*, [1981 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 97,978 (S.D.N.Y.1981). Both of these methods demonstrate that the attorneys' fees requested in this case are fair and reasonable.

Under the first method, the starting point for determining an attorneys' fee is to multiply the number of compensable hours spent on the litigation by a reasonable hourly rate. A court may then adjust this figure by considering two additional factors—the contingent nature of success and the quality of the services provided. *Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117–18 (3d Cir.1976).

In a detailed affidavit, Lawrence Milberg, Esq., set forth the time expended by each attorney and paralegal in the Milberg Weiss firm and arrived at a total of 931.25 hours for the law firm. The affidavit also set forth the hourly rate of each participant and included an analysis of the work performed and a description of the expertise of each attorney, which fully support the reasonableness of the requested hourly rates. When the number of hours expended is multiplied by the various hourly rates, a lodestar figure of $150,992.50 is obtained. Milberg Weiss requests an upward adjustment of the fee award to $227,000, which constitutes a multiple of 1.5 and represents less than two times the normal hourly fee of plaintiffs' attorneys for the more than 900 hours that they expended on this case.

▮ An increase in a fee award is appropriate in situations, such as this one, where an action is prosecuted solely on a

contingent fee basis and counsel, faced with a large case containing complex and novel legal issues, successfully recovers a substantial benefit to the class. *City of Detroit*, 495 F.2d at 470; *Lindy Bros.*, 540 F.2d at 117. In our Order approving the settlement, we have already indicated the novelty and complexity of the legal issues raised by this lawsuit and have discussed the difficulties faced by plaintiffs' attorneys on the merits of this case. The settlement provides class members with funds they might well not have received even after trial. Milberg Weiss competently, diligently and vigorously pursued this action despite the great risk that liability and substantial damages could not be proven. Milberg Weiss deserves to be highly commended for the skill and determination they have demonstrated in this action. For these reasons we believe the fee increase is not only fair and reasonable, but indeed a relatively modest one.[3]

The reasonableness of the fee award requested by the plaintiffs is further demonstrated when the award is viewed as a percentage of the total benefit obtained by Milberg Weiss for the class. The requested fee represents 25 percent of the settlement fund. This percentage is consistent with awards in similar cases. *E.g., Amsterdam v. Turbodyne Corp.*, [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,976 (S.D.N.Y.1981) (court awarded 29.4% of settlement fund for counsel fees); *Weinberger v. Cook Industries, Inc.*, [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,978 (S.D.N.Y.1981) (court awarded 27% of settlement fund for counsel fees); *In re Scientific Control Corp.*, 80 F.R.D. 237, 244 (S.D.N.Y.1978) (court awarded 30% of recovery for counsel fees); *The Munsey Trust v. Sycor, Inc.*, 457 F.Supp. 924 (S.D. N.Y.1978) (court awarded 32% of recovery for counsel fees).

the "risk in litigation" factor, as is hereinafter indicated.

**2.** See and compare *Tornabene v. General Development Corp., et al.*, 88 F.R.D. 53, 62–64 (E.D.N. Y.1980), *aff'd,* 657 F.2d 265 (2d Cir.1981).

**3.** Milberg Weiss, of course, is a highly respected law firm in this field as are counsel for the defendants in this case.

It should be noted that there have been no objections to the plaintiffs' request for an award of attorneys' fees in the amount of $227,000 and reimbursement of $5,615.79.

For the above stated reasons, the plaintiffs' application is hereby granted.

SO ORDERED.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER APPROVING SETTLEMENT

1. This Court has jurisdiction of this action pursuant to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. 78aa, 28 U.S.C. §§ 1331 and 1337(a) and in accordance with principles of pendent jurisdiction.

2. Plaintiffs Edgert Milstein and May Milstein (the "Milsteins") commenced this class action in April 1983 on behalf of themselves and a class consisting of all persons who owned or purchased common stock of Morse Electro Products Corp. ("Morse Corp.") on or after December 16, 1981 and sustained damage thereby. The action was brought against the Mathes Company, its subsidiaries Curtis Mathes Manufacturing Company and Curtis Mathes Corporation (hereafter collectively referred to as "Mathes"), certain of its present and former officers and directors and against Morse Corp. and certain of its present and former officers and directors.

3. Plaintiffs allege violations by defendants of §§ 10(b), 14(d), 14(e) and 13(d) of the Securities Exchange Act of 1934, the Rules and Regulations of the Securities and Exchange Commission promulgated thereunder and common law principles. Plaintiffs seek damages alleged to have been sustained by plaintiffs and the class as a result of such violations.

4. Plaintiffs allege in substance that Mathes, aided and abetted by all the other defendants, seized control of Morse Corp. in December of 1981 through an illegal and selective tender offer not denominated as such by defendants but which plaintiffs allege constituted a "creeping" tender offer (the "1981 Tender Offer"). Plaintiffs further allege that the 1981 Tender Offer was accompanied by repeated deceptive statements made by Mathes and Morse Corp. that Mathes would propose a merger to remaining Morse Corp. shareholders in April or May of 1982 at a price of $2.70 per share or book value of Morse Corp. if higher (the "$2.70 buyout"). It is alleged that the 1981 Tender Offer, the deceptive statement about the $2.70 buyout and the entire subsequent course of events were part of an integrated scheme by defendants to force out Morse Corp. public shareholders through the mechanism of a later Tender Offer, in March 1983 (the "1983 Tender Offer") at what plaintiffs allege was the unfair price of $1.50 per share and leaving non-tendering shareholders subject to a merger or other corporate combination at an unfairly low price dictated by the Mathes controlled Morse Corp. Board of Directors.

5. Defendants have answered the complaint in this action and have denied all charges asserted against them and raised defenses to the claims set forth therein.

6. On April 20, 1984, the Court ordered that this action be maintained as a class action for purposes of settlement only, pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

"All persons other than the defendants herein, members of the immediate family of each individual defendant, subsidiaries or affiliates of any defendant and any entity in which any defendant has a controlling interest, who were holders of common stock ('Common Stock') and/or warrants to purchase common stock ('Warrants') of Morse Electro Products Corp. ('Morse Corp.') from December 16, 1981 to and including March 19, 1984 and who did not sell that common stock or any common stock acquired upon the exercise of Warrants to any of the defendants (the 'Class' or 'Class Members')."

This class was divided into the following Sub-classes:

"(a) A Sub-Class consisting of all persons who sold Common Stock between December 16, 1981 and March 19, 1984 in the open market ('Open Market Seller Sub-Class').

(b) A Sub-Class consisting of all persons who tendered Common Stock pursuant to the March 1983 Tender Offer ('Tender Seller Sub-Class'); and

(c) A Sub-Class consisting of all persons who owned Common Stock and/or Warrants as of the close of business on March 19, 1984 ('Current Shareholder Sub-Class')."

Presently before the Court is the application by the parties for an Order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, approving the proposed settlement of this action in accordance with the terms of a stipulation of settlement dated April 16, 1984 (the "Stipulation of Settlement"). Pursuant to the Stipulation of Settlement and in full settlement of all individual and class claims, all defendants have agreed to pay the aggregate sum of $908,-377.60 to be distributed to members of the class after deduction of Court awarded fees and expenses for plaintiffs' counsel.

For the reasons stated the proposed settlement is approved as fair, reasonable and adequate. The Court hereby certifies a permanent class and sub-classes as described in paragraph 6 above. This action is dismissed with prejudice.

### FINDINGS OF FACT [1]

#### The Parties

7. Plaintiffs Edgert and May Milstein are residents of Queens, New York. They purchased 500 common shares of Morse Corp. stock on April 21, 1978 which stock they tendered to Morse Corp. in the 1983 Tender Offer. In addition, plaintiffs purchased 500 other shares of Morse Corp. stock on February 16, 1982 and sold such stock on December 30, 1982. [Complaint ¶ 6].

8. The defendant Mathes Company is a Delaware corporation. Through its subsidiaries—the other defendants Curtis Mathes Manufacturing Company and Curtis Mathes Corporation—Mathes manufactures, sells and distributes TV sets under the name "Curtis Mathes". [Complaint ¶ 7, 8].

9. Defendants Curtis Mathes [2], Burke Mathes and Jay S. Meyer were during the Class Period directors of all Mathes Companies. Defendant Thomas R. Maher was a director of Curtis Mathes Manufacturing Company. [Complaint ¶ 10, 11].

10. Defendant Morse Corp. is a New York corporation with its principal place of business in Brooklyn, New York. Morse Corp. produces and sells moderately priced sterophonic consoles and audio systems under the names "Pilot", "Morse", "Electrophonic" and "Philharmonic". [Complaint ¶ 12].

11. Defendants Philip S. Morse and Gerald Zarin were, during the Class Period, respectively, Chief Executive Officer and President of Morse Corp.

12. Defendants Robert S. Jones, Ludwig A. Huck and Peter A.T. Sartin were directors of Morse Corp. after January, 1982. In addition, they were either officers, employees or directors of Mathes. [Complaint ¶ 14].

### FACTUAL BACKGROUND

13. On or about November 16, 1981 Morse Corp. had nearly 3.1 million shares of common stock outstanding with approximately 2,000 shareholders. Philip S. Morse was the largest shareholder of Morse Corp. owning 838,408 shares of the company's common stock or 29% of the common shares of stock outstanding.[3] [Complaint ¶ 13].

14. On November 16, 1981 Mathes entered into an agreement with Philip S.

---

1. The facts are taken from pleadings and affidavits submitted to the Court.

2. By order dated January 6, 1984, Melinda Cheney Mathes, as Executrix of the Estate of Curtis

Mathes, was substituted for defendant Curtis Mathes.

3. The total includes 11,404 shares held by Philip S. Morse, as Trustee.

Morse which provided Mathes with an option to purchase Mr. Morse's 838,408 shares of Morse Corp.'s common stock at $6.00 per share before December 31, 1981. At this time, Morse Corp's common stock was trading at $1⅛ on the over-the-counter market. [Complaint ¶ 20].

15. Mathes filed a Schedule 13D statement dated November 27, 1981 with the Securities and Exchange Commission. In the 13D Mathes stated that its purpose in acquiring the option was:

"so that Mathes can ultimately acquire all of the Company [i.e. Morse Corp.]".

Mathes further stated in its 13D that: "Assuming exercise of the Option.... Mathes would propose to enter into a cash merger with the Company providing for each share of Common Stock of the Company not owned by Mathes to be exchanged for $2.70 cash (the estimated book value at March 31, 1982) or their audited book value per share at March 31, 1982, whichever is greater. At September 30, 1981, the unaudited book value of the shares of Common Stock of the Company on a fully-diluted basis was $2.84 per share. Said merger would be presented to stockholders of the Company for approval at a Special Meeting of Stockholders to be held in April or May of 1982." [Complaint ¶¶ 21, 22].

16. The 13D also stated that Mathes was negotiating with other Morse Corp. shareholders, consisting of lending institutions and suppliers, to grant Mathes the option to purchase 28,768 shares of Morse Corp. stock, warrants to purchase 602,380 shares of common stock and 102,000 shares of preferred stock, such shares and warrants to be purchased on or before December 31, 1981. [Complaint ¶ 23].

17. On December 11, 1981 Mathes acquired from eight Morse Corp. shareholders, consisting of CitiBank, N.A., Wells Fargo, N.A., The Chase Manhattan Bank, Bankers Trust Company, Manufacturers Hanover Trust Company, Hempstead Bank, Nicheman Co. Inc., and BSR (USA) Limited, options to purchase 28,768 shares of Morse Corp. common stock and warrants to purchase 602,380 shares of common stock at a price of $2.70 per share and 102,000 shares of Morse Corp. preferred stock at a price of $4.415 per preferred share. The options were to be exercised on or before December 31, 1981. [Lawrence Milberg Affidavit in Support of Proposed Settlement ¶ 8 (hereinafter cited as Milberg Aff.)].

18. The Option Agreement stated that Mathes' exercise of the Option was contingent on obtaining in excess of 34% of the common stock of Morse Corp. common stock presently outstanding from shareholders other than the eight shareholders. [Milberg Aff. ¶ 8].

19. The aforementioned eight shareholders owned differing amounts of Morse Corp. common stock and warrants to purchase Morse Corp. common stock.

20. Mathes filed an amended Schedule 13D with the Securities and Exchange Commission on or about December 16, 1981 describing the above transaction. In this 13D Mathes also stated that its purpose in acquiring the options was so that Mathes could ultimately acquire all of Morse Corp. Mathes also stated in the 13D that:

"Assuming exercise of the Option and the Lenders Option, Mathes would propose to enter into a cash merger with the Company providing for each share of common stock of the Company not owned by Mathes to be exchanged for $2.70 cash (being the estimated book value per share at March 31, 1981) or the book value per share at March 31, 1982 whichever is greater. At September 30, 1981 the unaudited book value of the shares of common stock of the Company on a fully-diluted basis was $2.84 per share. Said merger would be presented to stockholders of the Company for approval at a Special Meeting of Stockholders to be held in April or May of 1982." [Complaint ¶ 25].

21. On December 23, 1981 Mathes exercised the Options referred to above and purchased:

(1) 838,408 shares of common stock from Mr. Morse, and Mr. Morse as Trustee, at $5.60 per share.

(2) 631,148 shares of common stock from eight shareholders at $2.70 per share;

(3) 102,000 preferred shares from these eight Shareholders at $4.4145 per share. [Complaint ¶ 30].

22. On December 29, 1981, Mathes purchased 40,000 shares of Morse Corp. common stock on the open market at $2.25 per share. [Complaint ¶ 30]. .

23. On December 30, 1981, Mathes purchased 66,525 shares of Morse Corp. common stock at $2.70 per share. These shares were purchased from 15 employees of Morse Corp. pursuant to options exercised by Mathes on December 30, 1981. [Complaint ¶ 30].

24. On or about January 11, 1982, Mathes disclosed the above transactions in an amendment to its Schedule 13D filed with the Securities and Exchange Commission. In the 13D Mathes stated:

*Purpose of Transaction*

"The purpose of acquiring the shares of the Company by Mathes, is so that Mathes can ultimately acquire all of the Company. Mathes proposes to enter into a cash merger with the Company providing for each share of Common Stock of the Company not owned by Mathes to be exchanged for $2.70 cash (being the Company's estimated book value per share at March 31, 1982) or the Company's book value per share at March 31, 1982 whichever is greater. At September 30, 1981, the unaudited book value of the shares of Common Stock of the Company on a fully-diluted basis was $2.84 per share. Said merger will be presented to the stockholders of the Company for approval at a Special Meeting of Stockholders to be held in April or May of 1982." [Complaint ¶ 29].

25. In the beginning of 1982, the Morse Corp. Board of Directors was increased from three to five directors. Three Mathes designees, including defendants Curtis Mathes and Burke Mathes were elected to the newly created directorships. [Complaint ¶ 33].

26. Defendant Morse Corp. in a Notice of Shareholders Meeting dated February 8, 1982 stated that:

"The Mathes Company has stated that it intends to enter into a cash merger with the Company [i.e. Morse Corp.] providing for each share of Common Stock not owned by Curtis Mathes Manufacturing Company to be exchanged for $2.70 cash (the estimated book value at March 31, 1982) or the audited book value at March 31, 1982 whichever is greater. At September 30, 1981, the unaudited book value of the shares of Common Stock on a fully-diluted basis was $2.84 per share. If approved by the Company's Board of Directors, the merger would be presented to the shareholders of the Company for approval at a Special Meeting of Shareholders." [Complaint ¶ 35].

27. On March 4, 1983 Morse Corp. announced that it was making a Tender Offer to remaining shareholders other than Mathes to purchase their shares of common stock at $1.50 per share. The Tender Offering Circular stated that while it had been the announced intention of Mathes to enter into a cash merger with Morse Corp. and purchase the remaining shares outstanding at $2.70 per share or the book value per share at March 30, 1982, whichever was higher, Mathes had determined not to proceed with the merger "as a result of the general economic decline". [Complaint ¶ 38].

28. The Tender Offering Circular stated that Morse Corp. shareholders who did not tender might face difficulty in selling their shares as there could be an illiquid market for Morse Corp. shares. The Circular further stated that Morse Corp. might go private after completion of the Tender Offering. [Complaint ¶ 39].

29. The Circular also disclosed that in 1982 Morse Corp. had sold its Hong Kong subsidiary at a $1,200,000 loss. The Circular also reported that Morse Corp. had a $76,000,000 net operating loss carryfor-

ward but no value was assigned to it in setting the tender price. [Complaint ¶ 40].

## CONCLUSIONS OF LAW

*The Proposed Settlement is Fair, Reasonable and Adequate*

30. The requirements for court approval of a settlement of a class action are set forth in Fed.R.Civ.P. 23(e):

A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

■ 31. It is established beyond question that the law favors the compromise of disputed claims. This principle fully applies to shareholder class actions. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *Spiekermann v. Whittaker Corp.*, 598 F.Supp. 1 (E.D.N.Y.1978).

■ 32. As the Second Circuit stated in *Weinberger v. Kendrick*, 698 F.2d at 73, "The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate." *See also Spiekermann v. Whittaker Corp.*, 598 F.Supp. 1, 5. Moreover, a strong initial presumption exists in favor of a proposed settlement where the proponents establish that: (i) the settlement is not collusive but was reached after arm's length negotiations; (ii) the proponents have counsel experienced in similar position; (iii) there has been sufficient discovery to enable counsel to act intelligently and (iv) the number of objectors and their relative interest are small. *Galdi Securities Corp. v. Propp*, 87 F.R.D. 6, 10 (S.D.N.Y.1979). *See also Weiss v. Drew National Corp.*, 465 F.Supp. 548, 551 (S.D.N.Y.1979).

■ 33. Where the presumption of fairness is established, the Court must then weigh "plaintiffs' likelihood or probability of succeeding on the merits against the benefits of the proposed settlement" *Spiekermann v. Whittaker Corp.*, 598 F.Supp. 1, 5. *See also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir.1974). In *Grinnell*, the Second Circuit approved consideration of the following list of criteria upon which such a balancing should be based:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463 (citations omitted).

*The Presumption of Fairness Applies to the Proposed Settlement*

■ 34. The manner in which this litigation has been conducted and this proposed settlement arrived at supports the presumption that this settlement is fair:

(a) Both plaintiffs and defendants are represented by skilled counsel experienced in handling securities litigation.

(b) Counsels' judgments are based upon a thorough knowledge of the strengths and weaknesses of their respective positions: during the nearly 14 months since this action was commenced, counsel for plaintiffs has had access to and has conducted a thorough examination of a voluminous number of documents and has conducted depositions of key officers of Morse Corp. and Mathes.

(c) The record supports the parties' assertion that the terms of the Stipulation of Settlement were arrived at after long and hard bargaining at arm's length.

(d) Moreover, plaintiffs have adequately represented the interests of all members of the class. Whether or not the plaintiff is an adequate representative depends upon whether "the representatives [will] put up a real fight." *Dolgow v. Anderson*, 43

F.R.D. 472, 494 (E.D.N.Y.1968) (*citing* Chafee, *Some Problems of Equity* 231 (1950)). Like the situation before Judge Weinstein in *Dolgow*, "there is nothing to indicate that plaintiffs ... [did not] prosecute this action vigorously or that plaintiffs' attorney is not competent to do so." *Id.* As noted above, plaintiffs herein are represented by a leading firm in the securities class action bar. Throughout the pendency of this action, plaintiffs' counsel have vigorously conducted document and deposition discovery and undertook prolonged negotiations in arriving at the terms of the settlement before me. Thus, there can be no doubt that plaintiffs have adequately represented the other members of their class.

*Uncertainties Regarding Plaintiffs' Claims*

35. The allegations of plaintiffs' complaint have three principal thrusts:

(a) the allegation that Mathes' 1981 purchases constituted a selective ("Creeping") Tender Offer;

(b) the allegation that defendants misrepresented that Mathes planned to merge with Morse Corp. in April or May of 1982 at $2.70 per Morse Corp. share, thereby violating Sections 10(b), 14(e), and 13(d); and

(c) Plaintiffs' allegation that the 1983 Tender Offer was the culminating event in Mathes' integrated scheme, beginning with the 1981 purchases which constituted the Tender Offer, to freeze-out Morse Corp. shareholders at an unfairly low price.

36. As described below and based on the record before this Court, there is a genuine dispute between the parties on all branches of plaintiffs' complaint and these disputes raise factual issues which cannot be resolved absent a full trial on the merits. In view of the uncertainties involved regarding the merits herein, the compromise and settlement are appropriate.

*The Allegation That the 1981 Purchases Constituted a Tender Offer And Violated Section 14(d) of the Act*

37(a) The Williams Act is not limited to conventional tender offers. Section 14(d) applies to non-conventional transactions and supplies a private right of action for violation of its requirements. *See Wellman v. Dickinson,* 475 F.Supp. 783 (S.D.N.Y.1979), *aff'd,* 682 F.2d 355 (2d Cir.1982), *cert. denied sub nom. Dickinson v. S.E.C.,* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983).

(b) Under the *Wellman* decision, a non-conventional tender offer must satisfy the following elements to fall within the ambit of Section 14(d):

(1) active and widespread solicitation of public shareholders for the shares of an issuer; (2) solicitation made for a substantial percentage of the issuer's stock; (3) offer to purchase made at a premium over the prevailing market price; (4) terms of the offer are firm rather than negotiable; (5) offer contingent on the tender of a fixed number of shares, often subject to a fixed maximum number to be purchased; (6) offer open only a limited period of time; (7) offeree subjected to pressure to sell his stock. *Wellman v. Dickinson,* 475 F.Supp. at 823–824.

(c) Plaintiffs have compared the factual allegations of their complaint which are derived from defendants' public filings with the factual scenario present in *Wellman v. Dickinson, supra,* and argue strenuously that the 1981 purchases meet the test for a Tender Offer. Thus, plaintiffs note that in the instant action, at least 25 out of 2,000 Morse shareholders were solicited as compared with 42 out of 13,000 *Dickinson* shareholders. The number of selling shareholders in this case is 25 out of 2,000 compared with 39 out of 13,000 in *Wellman v. Dickinson.* The geographic distribution of the solicited shareholders was from coast to coast in *Wellman,* while here, the eight lenders were banks located in San Francisco and New York that had a special relationship with Morse Corp. Furthermore, documents produced by defendants indicated that the 15 employees who sold 66,525 shares to Mathes on December 30, 1981 were a far-flung group whose

residences were geographically dispersed from Texas to Montreal. Thus, plaintiffs argued, the requirement of "widespread" solicitation was satisfied.

(d) Plaintiffs argue that the other elements delineated in *Wellman v. Dickinson* are also present. Thus, the purchase of the 44.16% of Morse Corp. stock in December 1981 was at a substantial premium above the market price of those shares. Mathes paid to Philip S. Morse, controlling shareholder, $5.60 per share, a 500% premium over Morse Corp.'s $1⅛ market price. It paid $2.70 to Morse employees and others, a 100% premium. Here as in *Wellman*, Mathes' purchases were contingent on obtaining a minimum percentage of Morse Corp. stock—34% as indicated in Mathes' Schedule 13D of December 16, 1981.

(e) The offer in the instant case was open for a limited period of time. Under terms of the option held by Mathes, the purchases had to take place within one month.

(f) Plaintiffs also contend that strong circumstantial evidence and some documentary evidence produced by defendants suggest that the offerees were subjected to pressure to sell their stock and that the terms of the offer were firm rather than negotiable. The fact that all 23 sellers, aside from Philip S. Morse, received the same $2.70 price for their Morse holdings, despite the vast difference in the amount held by each seller, leads to an inference that Mathes was dictating the price to the sellers. That the purchases were accomplished after Philip S. Morse had committed to sell his control block of 29% to Mathes, would add pressure on the sellers to sell their stake in Morse Corp. at a premium while Mathes' dominance was not yet complete.

(g) Plaintiffs contended that this uniform pattern of sales suggested a herd reaction rather than independent, arms' length negotiations between sellers and buyer.

(h) Under all these circumstances, plaintiffs assert that an unconventional Tender Offer was successfully pleaded here and could be substantiated at the time.

(i) Defendants on the other hand contend that plaintiffs' allegations and facts fall far short of the required ingredients for a tender offer. The claim of active and widespread solicitation is belied by the numbers of selling shareholders—only 25. Accordingly, argue defendants, the 1981 sales bear all the earmarks of purely private transactions as opposed to a tender offer. Further, in defendants' view, plaintiffs have alleged only in the most conclusory terms that the sellers were subjected to pressure to sell their stock. The sellers included powerful institutions such as Citi-Bank and Manufacturers Hanover Trust Company. It is highly unlikely that these sellers would have been stampeded by Mathes to sell against their best business judgment. Defendants point to case law such as *Brascan, Ltd, v. Edper Equities, Ltd.* 477 F.Supp. 773 (S.D.N.Y.1979) (solicitation of approximately 60 shareholders not a tender offer); *D–Z Investment Co. v. Holloway*, (CCH) Fed.Sec.L.Rep. ¶ 94,771 (S.D.N.Y.1974) (solicitation of 24 stockholders not a tender offer); *Nehman Corp. v. Halfred, Inc.*, (CCH) Fed.Sec.L.Rep. ¶ 94,-455 (N.D.Ill.1973) (purchases from 14 shareholders after solicitation of 40 out of a total of 600 is insufficient to constitute a tender offer), as precluding a finding that the 1981 purchases constituted a Tender Offer.

(j) Similarly, defendants stress the lack of any factual predicate underlying plaintiffs' allegations that the terms of the offer to the sellers were firm rather than negotiable.[4]

(k) Based on the record before this Court, there is a genuine dispute between the parties as to liability based on the Section 14(d) allegation, which cannot be resolved absent a full trial on the merits.

---

4. For example Mr. Zarin (Vice President of Morse Corp.) testified that the price to Philip S. Morse had been reduced from $6.00 to $5.60 (Zarin dep. pg. 48).

*Plaintiffs' Claims As To Defendants' Alleged Misstatements And Omissions of Facts*

(i) *The Alleged Misrepresentation That Mathes Would Present a Proposal to Morse Corp. Shareholders in April or May of 1982 to Merge With Morse Corp. at $2.70 Per Share or Book Value If Higher*

38(a) The Courts have repeatedly stated that false representations of intent violate § 10(b) of the 1934 Act. *See A.T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir.1967); *SEC v. Globus International Ltd.*, 320 F.Supp. 158 (S.D.N.Y.1970). Relying on these principles, plaintiffs assert that defendants committed actionable deception by representing that a merger would be presented to Morse Corp. shareholder when, in fact, defendants never intended to honor that promise. Plaintiffs also allege that defendants omitted to truthfully disclose that their real purpose in taking over Morse Corp. was to coerce remaining shareholders to tender their shares at the unfairly low price of $1.50 per share dictated by defendants in the 1983 Tender Offer. It is plaintiffs' contention that the 1983 Tender Offer was the culminating step in Mathes' unitary scheme, beginning with its December 1981 purchases, to oust Morse Corp. public shareholders. Plaintiffs assert that defendants misrepresentation about a $2.70 merger lulled shareholders into a false sense of security concerning Mathes' ultimate purposes.

(b) Defendants vigorously dispute plaintiffs' allegations. They argue Mathes' statements of intention that it would present a merger proposal were honestly believed at the time they were made. The merger was abandoned because of adverse economic conditions. Defendants also dispute the charge that Mathes' true purpose in obtaining control of Morse Corp. was to coerce public shareholders to tender their shares at an unfairly low price in the 1983 Tender Offer. It is defendants' position that these allegations are simply untrue and that the 1981 purchases and the 1983 Tender Offer were two distinct and unrelated transactions and not part of a unified scheme as alleged by plaintiffs.

(c) Although both parties assert that their position will ultimately prevail, there is no way for this Court to make such an ultimate determination absent live testimony. Accordingly, based upon the record, definitive resolution of the merits of this aspect of plaintiffs' claim is uncertain.

39. *Defendants' Alleged Misrepresentations Concerning the Value of Morse Corp.'s $76,000,000 Tax Loss Carryforward and Morse Corp's Alleged Manipulative Sale of the Hong Kong Subsidiary*

(a) Plaintiffs allege that the 1983 Tender Offer Circular falsely reported that Morse Corp. did not assign any value to a $76,000,000 net operating loss carryforward. According to plaintiffs, this statement was deceptive, because the tax loss carryforward was a valuable asset to Morse Corp. and defendants falsely minimized the value of the carryforward in order to induce shareholders to acquiesce to the unfair 1983 tender Offer.

(b) Plaintiffs also claim that the sale in 1982 of Morse Corp's Hong Kong subsidiary at $1,200,000 loss was manipulative because it was designed to create a paper loss without any substantial change in existing business arrangements.

(c) Defendants dispute both allegations. They assert that the tax loss carryforward was not saleable and that, in any event, full disclosure was made regarding the carryforward. Defendant Zarin, Morse Corp.'s President, testified that the Hong Kong Corporation had been unsuccessfully offered for sale prior to the Mathes transaction (Zarin dep. pp. 141–144). Nor, was there any manipulation respecting the sale of Morse Corp.'s Hong Kong subsidiary. The subsidiary was sold because it was losing money; Morse Corp. was glad to be rid of it.

(d) Based on these sharply differing versions of events, it is clear that resolution of

the above issues could only be accomplished after trial.

40. *Plaintiffs Would Have Difficulty Establishing The Requisite Damages*

(a) Plaintiffs must prove that they and the other members of the class were injured by defendants' alleged misrepresentations and that they have suffered damages as a result of this injury. Even if plaintiffs prove that defendants misrepresented that they would propose a merger to Morse Corp. shareholders, plaintiffs may have difficulty in proving they were damaged by these misrepresentations.

(b) Defendants press the point that any alleged misrepresentations that there would be a merger between Morse Corp. and Mathes at $2.70 for Morse Corp. shares or book value if higher would tend to boost the market price of Morse stock. Therefore, argue defendants, class members who sold Morse stock before Mathes' announcement in March 1983 of the 1983 Tender Offer and Mathes' reneging on its promise of a $2.70 merger, would not have been damaged by the misrepresentation. Many class members undoubtedly sold their shares at a time when these statements inflated the market price and therefore the selling price these shareholders received for their Morse stock. Defendants also assert that Mathes' representations respecting the $2.70 merger were still operative until the announcement of the 1983 Tender Offer. Accordingly, defendants' position is that class members, like plaintiffs, who sold part of their shares prior to the 1983 Tender Offer had not suffered any damage.

(c) Plaintiffs countered these arguments by noting that the impact of Mathes' promise on the market, the duration of that impact and whether those promises caused a rise in market prices presented factual questions unsuitable for resolution prior to trial. *Ross v. A.H. Robins Co, Inc.*, 465 F.Supp. 904, 908 (S.D.N.Y.1979). Plaintiffs contend that while Mathes' misrepresentation may have temporarily boosted the price of Morse Corp. common stock, it is common knowledge in securities litigation that a false promise or projection when unmasked as false, ultimately results in a catastrophic drop in value of the stock. *See A.T. Brod & Co. v. Perlow*, 375 F.2d 393, 397 (2d Cir.1967), *Jacobs, The Impact of Rule 10b-5* § 130.05[b], ¶¶ 6-31, 6-32.

(d) There is a sharp conflict as to the establishment of damages in this case, i.e. the scope of damages, if any, which plaintiffs would be able to establish at this point is uncertain and supports the compromise of these claims.

*The Amount Offered in Settlement Falls Within the range of Reasonableness*

41. Among the criteria set forth by the Second Circuit in *Detroit v. Grinnell Corp.*, 495 F.2d at 463, are two expressed in terms of: (i) the range of reasonableness of the settlement fund in light of the best possible recovery, and (ii) the range of reasonableness of the settlement fund in light of the risks posed in litigation. Application of the first test is normally a function of the completion of recovery. Application of the second test is normally dependent on a comparison of the amount offered, in this case $908,377.60, to the potential recovery, assuming success at trial. *See, e.g., Weiss v. Drew National Corp.*, 465 F.Supp. 548, 551 (S.D.N.Y.1979).

42. The $908,377.60 settlement represents a reasonable assessment of the litigation risks for plaintiff and the Class and reflects the advantages to the Class in settling now rather than awaiting the time which would elapse until the litigation went to trial, appeal and final resolution. In addition, the merger, which is linked with the $908,377.60 monetary payment of the Settlement represents payment to the current shareholder class of $2.40 per share, the fair value of their interest in Morse Corp.

43. The Courts have approved settlements for even a small percentage of the maximum possible recovery even when the maximum possible recovery has been subject to a "guesstimate". As the Court pre-

viously stated in *Spiekermann v. Whittaker Corp.*, 598 F.Supp. 1, 5:

> Because the adequacy of a settlement offer turns on an evaluation of plaintiffs' likelihood of success rather than a decision on the merits, a settlement "can be inadequate only in light of the strength of the case presented by plaintiffs." *Grinnell 1*, *supra*, 495 F.2d at 455. Thus, a court will not reject a settlement proposal solely because the amount offered may represent no more than a small fraction of the potential recovery. *Id.* and n. 2.

44. *The Complexity, Expense and Likely Duration of the Litigation Underscores That the Proposed Settlement is Fair*

■ Estimating with precision the duration of the litigation and the length of the trial in this matter would be virtually impossible. However, a trial might well last several weeks and would certainly be extremely expensive and disruptive to Mathes' and Morse Corp.'s directors and officers. Moreover, protracted appeals by either plaintiffs or defendants would be likely. The expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of this settlement. *See Bullock v. Administrator of Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J.1979).

45. *The Reaction of Class Members to the Class Settlement*

The reaction of class members to the class settlement has been overwhelmingly favorable. No objections have been filed as of the date of this Order. Moreover, as of June 18, 1984 no persons or entities have requested exclusion from the class.

NOTICE

46. This Court also finds that class members have received adequate notice of the pendency of this action and settlement. All persons appearing on the transfer records of Morse Corp. as record transferees of Morse Corp. common stock and/or warrants to purchase common stock during the period December 16, 1981 to and including March 19, 1984 have been sent detailed notice as to the nature of this action, the terms of the proposed settlement, the date of the hearing and the options which they have available with respect to the settlement. Proof of claims forms where applicable were included with such notice. In addition, a summary notice of the action and proposed settlement was published in editions of the *Wall Street Journal* and *The New York Times*.

47. Brokers and other nominees holding Morse Corp. stock in record name during the period December 16, 1981 through March 19, 1984 have been requested to provide lists of names and addresses of their customers who were beneficial holders of such securities during that period and are potential class members, or to forward Notices and Proof of Claim forms directly to such persons and entities. In those instances where the brokers or other nominees have elected to provide a list of names and addresses of their customers, the persons and entities on such lists have been mailed copies of the Notice and Proof of Claim forms, where applicable; in those instances where the brokers or other nominees have elected to mail information directly to their customers they have been provided additional copies of the Notice and Proof of Claim form.

CONCLUSION

■ 48. The issues raised by the complaint in this action are highly complex. Each of the claims asserted by plaintiffs have been vigorously disputed by defendants and both positions in most instances find support in the record before me. A final determination as to the merits of plaintiffs' claims cannot be made absent a trial on the merits, where this Court would be in a position to evaluate the credibility of witnesses and obtain the benefit of the wisdom of the parties' expert witnesses. Issues of fact and law exist as to which resolution is so uncertain as to warrant the

**268**

parties' decision to settle on the terms set forth in the Stipulation of Settlement.

49. In light of the foregoing, and after taking into account all the factors set forth by the Second Circuit in *Grinnell* based upon the record before me,[5] the Court finds that the settlement of this class action upon the terms embodied in the Stipulation of Settlement is fair, reasonable and adequate and in the best interests of the members of the Class in this action and said settlement is hereby approved.

50. The complaint is dismissed, with prejudice, as against all of the defendants. Plaintiff and all other members of the Class, except those persons who have timely requested exclusion pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure, are hereby barred and permanently enjoined from prosecuting any individual or class claims against Morse Corp. or Mathes, Ludwig A. Huck, Robert S. Jones, Burke Mathes, Melinda Chaney Mathes as Executor for the Estate of Curtis Mathes, Thomas R. Maher, Jay S. Meyer, Philip S. Morse, Peter A.T. Sartin, and Gerald Zarin, and each of them, and their respective agents, servants, attorneys, present and former employees, officers, directors, subsidiaries, affiliates, stockholders, heirs, executors, representatives, successors and assigns relating to the Morse Corp. shares during the Class Period, which are or might have been asserted in this class action, arising out of any acts, facts, transactions, omissions or other subject matters set forth, alleged, embraced or otherwise referred to in the Complaint in this class action including any claims for violations of federal, state or other law, or of the common law.

51. The parties are directed to take all steps necessary to effectuate the terms of the Stipulation of Settlement and the Clerk of the Court is directed to enter judgment approving the Stipulation of Settlement.

52. This Court hereby retains jurisdiction over this class action until the settlement has been consummated and each and every act agreed to be performed by the parties hereto shall have been performed, and for all other purposes necessary to effectuate the terms of the settlement.

IT IS SO ORDERED.

---

**5.** We have discussed all of the *Grinnell* criteria with the exception of factor 6—"the risks of maintaining the class action through the trial"— and factor 7—"the ability of the defendants to withstand a greater judgment." *Grinnell,* 495 F.2d at 463. We have considered these factors and find they are not material.